IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**EOD**
04/16/2013

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DEAN E. BUESCHER** | § | |
| xxx-xx-6271 | § | Case No. 09-42926 |
| and **SHERRY R. BUESCHER** | § | |
| xxx-xx-6744 | § | |
| | § | |
| Debtors | § | Chapter 7 |

| | | |
|---|---|---|
| FIRST UNITED BANK & TRUST CO. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 09-4239 |
| | § | |
| DEAN E. BUESCHER | § | |
| and SHERRY R. BUESCHER | § | |
| | § | |
| Defendants | § | |

## <u>MEMORANDUM OF DECISION</u>

This matter came before the Court for trial of the Complaint of the Plaintiff, First

United Bank and Trust Co. (the "Plaintiff"), through which it seeks to deny the entry of a

Chapter 7 discharge in favor of the joint Debtor-Defendant, Sherry R. Buescher

("Debtor"), pursuant to 11 U.S.C. §727(a)(2), §727(a)(3) or §727(a)(5) or, alternatively,

seeking a determination that a debt purportedly owed to the Plaintiff by Defendant should

be declared non-dischargeable under §523(a)(2), (a)(4) or (a)(6).  The trial pertained

solely to the actions of the Defendant since a discharge has already been denied to Ms.

Buescher's spouse, Dean E. Buescher, pursuant to that certain "Order Granting in Part

and Denying in Part Motion for Summary Judgment Filed by Plaintiff, First United Bank

& Trust Co." entered in this cause on April 24, 2012 and for the reasons set forth on the oral record of this Court on that date. However, the Plaintiff failed to demonstrate the propriety of entry of summary judgment against the Debtor as the spouse of Mr. Buescher.[1] At the conclusion of the trial and upon receipt of certain post-trial submissions by the parties, the Court took the matter under advisement. The following memorandum of decision disposes of all issues before the Court.[2]

## Background

The Debtor, Sherry R. Buescher,[3] is an attorney that has been licensed to practice law in the State of Texas since May 1985 with a concentration in real estate matters.[4] She has been married for the past 15 years to Dean E. Buescher, who was formerly engaged in a significant residential homebuilding enterprise through an entity known as Buescher Interests, L.P. ("BIL"). Through her connections to certain title companies, the Debtor served as the closing officer on numerous real estate transactions involving BIL.[5]

The Plaintiff, First United Bank & Trust Co., had previously loaned BIL

---

[1] The Plaintiff must make the proper showing as against each individual debtor. "The mere existence of the marital relationship does not determine a spouse's entitlement to discharge." *Cadlerock Joint Venture, L.P. v. Sauntry (In re Sauntry)*, 390 B.R. 848, 855 (Bankr. E.D. Tex. 2008), citing *First Texas Sav. Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 993 (5th Cir. 1993).

[2] This Court has jurisdiction to consider the Plaintiff's Complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A) and (I), and (J).

[3] Hereafter, any reference to "the Debtor" is a reference to Ms. Buescher.

[4] ¶ 14 of the Agreed Issues of Fact.

[5] ¶ 15 of the Agreed Issues of Fact.

approximately $19 million[6] that was personally guaranteed by Dean Buescher.[7]  In February 2008, an involuntary bankruptcy petition was filed against BIL in the United States Bankruptcy Court for the Northern District of Texas.  This ultimately led to the liquidation of BIL and the triggering of guaranty demands by First United against Dean Buescher for satisfaction of a deficiency of approximately $3 million.  First United initiated litigation on the guaranty in July 2009.  Being unable to satisfy the financial demands of First United, as well as other creditors, the Bueschers intensified their efforts to investigate the process of filing for personal bankruptcy protection.

The Bueschers eventually sought professional legal assistance from the Pelley Law Office in Sherman.  The law firm provided the Bueschers with worksheets as a preliminary step to the production of the required schedules and statements.[8]  The Debtor completed the worksheets on behalf of her and her husband, although she expressed concerns to the firm prior to the filing via email regarding ongoing questions about the required information and that she was "just trying to get everything listed as I can."[9]

On September 18, 2009, the Debtor and her husband filed a voluntary petition for relief under Chapter 7 in this Court without accompanying schedules and statements.[10]

---

[6]  See Plaintiff's Ex. 3-25.

[7]  Plaintiff's Ex. 26.

[8]  Defendant's Ex. A.

[9]  Defendant's Ex. B/C at p. 3.

[10]  ¶ 1 of the Agreed Issues of Fact.

On September 24, 2009, the Debtor again expressed concerns to the firm via email that communications had been sporadic and making a specific inquiry regarding the availability of a draft of the schedules for review.[11]

The required schedules and statements for the Debtor and her husband were filed by electronic means by the law firm on October 2, 2009.[12]  As has been the required process in this district since the advent of the CM-ECF filing system, though the schedules and statements were ostensibly signed by the debtors through the use of a "/s/" designation next to their typed names, a declaration containing an actual "wet signature" of the Debtor and her husband was filed with the Court on October 6, 2009, attesting that each of them had read the original statements and schedules to be filed "and that the information provided therein is true and correct."

Prior to the initial §341(a) meeting of creditors, Mark Weisbart, the Chapter 7 Trustee,[13] sent email correspondence to the Debtor's attorney on Tuesday, October 13, 2009, asking for:

(1)  all personal bank account statements and cancelled checks for the year prior to bankruptcy;
(2)  homeowners' policies for 2006-2009;
(3)  the Pacific Life insurance policy;
(4)  all documentation relating to 2009 transfers listed in Question 10 of the Statement of Financial Affairs; and

---

[11]  Defendant's Ex. B/C at p. 5.

[12]  Plaintiff's Ex. 1.

[13]  Mr. Weisbart had been appointed as the interim trustee of the Debtors' Chapter 7 estate on September 21, 2009.  See ¶ 2 of the Agreed Issues of Fact.

(5) a picture of the referenced boat and a copy of its title certificate.[14]

That correspondence was immediately forwarded to the Debtor and her husband by their

lawyers.[15]

At the initial §341(a) meeting of creditors conducted by the Trustee on Friday,

October 16, 2009, Mr. Buescher, while under oath, affirmatively answered his attorney's

inquiry regarding whether he had "had the opportunity to review your petition, schedules

and statement of financial affairs," whether "all your assets and liabilities [are] listed,"

and confirming that all of the information supplied to the attorneys that was used in the

preparation of the schedules and statements was true and correct.[16]  Upon subsequent

inquiry at the meeting, the Debtor confirmed under oath that her answers to those

questions would have been the same as her husband's.[17]  However, notwithstanding such

sworn testimony, the Debtor testified at trial that she had not, in fact, reviewed the

schedules for accuracy prior to the time that they were electronically filed and that she

had only seen them immediately prior to that first creditors' meeting.

After a home inspection was conducted by the Trustee, he tendered

correspondence to Mr. Pelley on November 12, 2009, seeking assistance from the

---

[14]  Defendant's Ex. E/F at p. 1.

[15]  *Id.* at p. 2.

[16]  Plaintiff's Ex. 2 at 4:13 - 5:1.

[17]  *Id.* at 7:10-12.   The Debtors also jointly answered a number of questions by the Chapter 7
Trustee regarding their assets and the Trustee continued the meeting to a future date in order to arrange an
inspection of the Debtors' expansive, 15,000+ square-foot home.  The photographs derived from that visit
were admitted as Plaintiff's Ex. 69.

Debtors in coordinating the inspection photographs with the property items listed in the schedules, seeking relevant bank and credit card statements, and requesting documentation of a number of property transfers involving the Debtors.[18]  To accommodate the Debtors' efforts, the §341 meeting was continued on two more occasions.

On February 15, 2010, the Trustee sent correspondence to Mr. Pelley, notifying him that the §341 meeting will be continued to, and likely concluded on, February 22, 2010.[19]  While acknowledging the receipt of certain materials from Mr. Pelley on January 8, 2010,[20] the Trustee asserted that the documentation response was incomplete and he sought a significant, detailed list of documentation from the Debtors.  The list of documentation sought by the Trustee ranged from missing bank statements and credit card statements for numerous months, to a request for copies of certain checks and deposits, all records pertaining to a number of vehicle sales conducted by Mr. Buescher, all books and records relating to certain sales of businesses by the Debtors, and the specific identification of numerous items of personal property. The Trustee requested that such information be tendered to him before the continued meeting on February 22.[21] Though certain information was provided on or before the continued meeting, a

---

[18]  Plaintiff's Ex. 67.

[19]  Defendant's Ex. I at pp. 2-5.

[20]  See Plaintiff's Ex. 68.

[21]  *Id.*

significant portion of the requests went unfulfilled by the Debtors.

The degree to which the Debtor was responsive to the Trustee's ongoing requests for information after the creditors' meeting was concluded in February is difficult to quantify. It is clear that the Debtor and her husband never amended Schedule B nor their Statement of Financial Affairs.[22] The Trustee testified that the Debtor and her husband did not comply with many of the requests, including demands for bank documentation and corroboration of certain pre-petition transfers of property, and, in certain instances, they refused to respond to requests when such information was not readily available on the Internet or production was allegedly cost-prohibitive. The Debtor contends that much of the information was supplied to their attorneys and was apparently never forwarded to the Trustee. She further expressed frustration that the Trustee would not deal with her directly regarding the information, notwithstanding her clear professional understanding that the Trustee was ethically prohibited from doing so when she was represented by counsel.[23]

However, notwithstanding any disputes between the Debtor and her lawyers, the evidence clearly establishes that the Debtor and her husband were not forthcoming in describing the piecemeal liquidation of their substantial property holdings in the months prior to their bankruptcy filing, nor in detailing the disposition of the substantial sums

---

[22] The only amendment was to the Debtors' Schedule C – Property Claimed as Exempt. ¶ 3 of the Agreed Issues of Fact.

[23] For example, the Debtor directly tendered certain documentation to the Trustee via letter on April 6, 2010. See Defendant's Ex. I at pp. 7-10.

realized thereby.  Now in the light of information that has been subsequently revealed from various sources in the post-petition period, it is clear that the Statement of Financial Affairs filed by the Debtor and her husband contained some significant omissions and deficiencies:

(1)    the Statement of Financial Affairs failed to provide information regarding the disposition of a 2000 BMW valued at $90,000.00; a 2001 Sportscoach RV 38MBD valued at $75,000.00, or a 1998 Harley Davidson motorcycle valued at $20,000.00, in that the dates of disposition, the amount received from any sale of these assets and the identity of the alleged transferees were not described;[24]

(2)    the Statement of Financial Affairs failed to provide information regarding the disposition of a 1939 Chevrolet and a 1997 Mercedes sold in June 2009, less than 90 days before the Petition Date, to unknown parties for undisclosed amounts, with no documentation available regarding the sales or the disposition of the proceeds;

(3)    the Statement of Financial Affairs failed to disclose that the Bueschers received $41,665.00 from the sale of their interests in The Insurance Center of Central Florida, Inc. on July 7, 2009, less than 90 days prior to the filing of their bankruptcy case; and the claimed disposition of these funds for "bills and expenses" is not corroborated by any bank statement or other financial documentation;

(4)    the Statement of Financial Affairs failed to provide sufficient information regarding Dean Buescher's liquidation of his individual retirement accounts at Northern Trust; the subsequent disposition of those funds was not corroborated by any financial documentation until the Debtor produced for the first time at trial a August 2008 bank statement from Fidelity Bank which documents the receipt and subsequent transfer of $205,330.74 on August 18, 2008 to an undisclosed recipient; and the withholding of such information has effectively precluded the Trustee from pursuing any potential action to recover that payment;

---

[24] The Debtors finally produced records regarding these transactions only when they sought reconsideration of the summary judgment order entered against Dean Buescher.  They produced records showing that the title to the 1998 Harley Davidson Motorcycle was transferred to Texas Vehicle Exchange on May 22, 2009; the 2001 Sportscoach RV 38MBD was titled to Eric Miles on April 4, 2011; and the 2000 BMW as sold in May 2008.  According to the subsequent sworn testimony of Dean Buescher, these transactions apparently all involved sales to third parties in 2008.

(5)     the Statement of Financial Affairs failed to provide sufficient information regarding the Debtors' disposition of $219,645.21 which they received from the sale of their Mabank lakehouse to family members in June 2008; the claimed disposition of these funds for "bills and expenses" is not corroborated by any bank statement or other financial documentation.

Finally, in the midst of his ongoing difficulties to ascertain the scope and validity of the Debtors' pre-petition liquidation activities, the Trustee learned from a third-party source that the Debtors were concealing assets in a Lewisville, Texas storage facility (the "Lewisville assets").  The Trustee made an unannounced visit to that facility and discovered several pieces of personal property that had not been previously disclosed by the Debtors on their schedules.[25]  The Trustee immediately sought court authority to sell these personal property items and, though various family members and a friend of the Debtors claimed ownership of the property and initially objected to the sale,[26] such ownership claims were ultimately withdrawn or abandoned prior to having to prove such ownership claims at the hearing to consider the Trustee's request.  In fact, in the sale order issued by Judge Rhoades on October 19, 2012, she specifically declared that the objecting parties "are found to have no right, title or interest in the Personal Property or sales proceeds."[27]

---

[25]  Plaintiff's Ex. 70.  Included among the assets the Trustee discovered at the storage facility were assorted antique buffets, credenzas, side tables, desks, armoire, sofas, chairs, vases, sculptures, chandeliers, a cash register, a Stairmaster, a tanning bed, and a hardtop to a Mercedes S500 automobile. The Trustee may have subsequently determined that certain assets were not property of this bankruptcy estate.

[26]  The objecting parties included Howard and Mercedes Buescher, the father and stepmother of Dean Buescher; Susan Buescher Girard, the sister of Dean Buescher; as well as Andrea Chase, a friend of Sherry Buescher.

[27]  See *Order Approving Supplemental Motion to Approve Sale of Personal Property* entered on October 19, 2012 [dkt #122] in case no. 09-42926 at p. 2.

As this effort for disclosure of relevant information and the discovery of undisclosed assets unfolded between the Trustee and the Debtors, First United Bank & Trust Co., initiated this adversary proceeding on December 15, 2009, seeking to deny a discharge to both Dean and Sherry Buescher on various grounds under §727(a) and, alternatively, seeking a determination that a significant deficiency amount was owed to it by both of the Debtors that should be declared non-dischargeable.[28]  As indicated earlier, the Court previously granted the Plaintiff's summary judgment motion as to Dean Buescher that denied the entry of a discharge order for his benefit and a final judgment awaits the trial and resolution of the Plaintiff's complaint against Sherry Buescher.

## Discussion

As one court has described it,

> a discharge in bankruptcy is a privilege — not a right — which must be earned.  Upon filing for bankruptcy, it is the debtor's obligation to be forthright in providing financial information.  No one is obligated to recreate the Debtor's financial affairs; that task is his alone.  The Bankruptcy Code makes complete financial disclosure a "condition precedent" to discharge. ...  In short, the global purpose of § 727 is to relieve creditors from the burden of "discovering" assets and to place it where it rightfully belongs, upon the debtor.

*Sonders v. Mezvesky (In re Mezvesky)*, 265 B.R. 681, 690 (Bankr. E.D. Penn. 2001) (citations and internal quotations omitted).  Because the denial of a debtor's discharge is

---

[28] The complaint, as now amended, objects to the Debtors' discharge under 11 U.S.C. §§ 727 (a)(2), (3), (4), and (5), as well as alternative grounds under §523(a)(2)(A), (a)(4), and (a)(6).

undoubtedly a harsh remedy, the provisions set forth in 11 U.S.C. §727(a) are precisely drawn so as to encompass only those debtors who have not been honest and forthcoming about their affairs. *Buckeye Retirement Properties v. Tauber (In re Tauber)*, 349 B.R. 540, 545 (Bankr. N.D. Ind. 2006) ["The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor."]. Thus, in order to accomplish that limited purpose, the provisions of §727(a) are to be construed liberally in favor of granting debtors the fresh start contemplated by the Bankruptcy Code and construed strictly against parties seeking to deny the granting of a debtor's discharge. *In re Ichinose,* 946 F.2d 1169, 1172 (5th Cir. 1991); *Melancon v. Jones (In re Jones)*, 292 B.R. 555, 559 (Bankr. E.D. Tex. 2003). As the Plaintiff seeking such relief, First United Bank bears the burden of proving that the Debtor is not entitled to a discharge under §727. The standard of proof for its allegations is a preponderance of the evidence. *See, e.g., Everspring Enter., Inc. v. Wang (In re Wang)*, 247 B.R. 211, 213-14 (Bankr. E.D. Tex. 2000) (*citing Grogan v. Garner*, 498 U.S. 279 (1991) and *Mozeika v. Townsley (In re Townsley)*, 195 B.R. 54 (Bankr. E.D. Tex. 1996)).

*§727(a)(4)(A): False Oaths.*

The Court will begin with a §727(a)(4)(A) analysis since the gist of the Plaintiff's complaint rests upon the alleged inaccuracy of the Debtor's bankruptcy schedules.

Section 727(a)(4)(A) provides that:
(a) The court shall grant the debtor a discharge, unless —
(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account . . . .

As one court has recently stated, "the bankruptcy schedules and statement of financial affairs of a debtor serve a vital role for creditors in a bankruptcy case, in that they ensure that adequate and truthful information is available to trustees and creditors, not just an objecting creditor, without the need for further investigation to determine whether or not the information is true and correct." *Mullen v. Jones (In re Jones)*, 445 B.R. 677, 726-27 (Bankr. N.D. Tex. 2011). "The purpose of §727(a)(4)(A) is to enforce a debtor's duty of disclosure and to ensure that the Debtor provides reliable information to those who have an interest in the administration of the estate. Thus, complete financial disclosure is a condition precedent to the privilege of discharge." *Fiala v. Lindemann (In re Lindemann)*, 375 B.R. 450, 469 (Bankr. N.D. Ill. 2007) (citations and quotations omitted).

Thus, an individual bankruptcy debtor may forfeit entitlement to a discharge by knowingly and fraudulently making a false oath. "False oaths sufficient to justify denial of discharge include (1) a false statement or omission in the debtor's schedules or statement of financial affairs, or (2) a false statement by the debtor at an examination during the course of the bankruptcy proceedings." *Buckeye Retirement Co., LLC v. Bullough (In re Bullough)*, 358 B.R. 261, 280 (Bankr. N.D. Tex. 2007). However, not every misstatement or omission in the schedules constitutes a false oath. Indeed, even multiple errors do not mandate the finding of a false oath without sufficient evidence of a

**-12-**

fraudulent intent.  *See, e.g., Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561 (5th Cir. 2005).

Thus, the Plaintiff, as the objecting party, carries the burden of proof under

§727(a)(4)(A) and must show by a preponderance of evidence that (1) the debtor made a

statement under oath; (2) the statement was false; (3) the debtor knew the statement was

false; (4) the debtor made the statement with fraudulent intent; and (5) the statement

materially related to the bankruptcy case.  *Cadle Co. v. Duncan (In re Duncan),* 541 F.3d

688, 695 (5th Cir. 2009); *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178

(5th Cir. 1992).  If a plaintiff establishes a *prima facie* case that a debtor made a

materially false statement, then the burden shifts to the debtor to present evidence that she

is innocent of the charged offense.  *Id*.

The evidence establishes that the Debtor's schedules and her Statement of

Financial Affairs contained numerous omissions that rendered false the sworn responses

of the Debtor.  These false statements were undoubtedly material to the bankruptcy case.

A false statement or omission is material "if it bears a relationship to the debtor's business

transactions, or if it concerns the discovery of assets, business dealings, or the existence

or disposition of the debtor's property."  *Andra Group, L.P. v. Gamble-Ledbetter (In re

Gamble-Ledbetter*), 419 B.R. 682, 692 (Bankr. E.D. Tex. 2009) (*citing Cadle Co. v.

Duncan,* 541 F.3d at 695*)*.  The materiality of the omitted assets from the Lewisville

storage facility cannot be seriously questioned.  The materiality of the information

omitted from the Statement of Financial Affairs regarding the Debtors' pre-petition

liquidation of their substantial assets was material because those misstatements

**-13-**

detrimentally delayed the fulfillment of the Trustee's statutory duty to investigate that extensive liquidation effort to determine whether any avoidance actions for the benefit of creditors would be appropriate.[29]  In this context, one must be reminded that the whole purpose of this subsection is to ensure "that adequate information is available for the trustee and creditors without need for investigation to determine whether the information provided is true." *Beauboeuf*, 966 F.2d at 179.

This case turns upon whether the erroneous statements made under oath in the Debtor's schedules were knowingly false and whether they were made by the Debtor with a fraudulent intent.  The Debtor contends that the evidence is insufficient to establish those required elements because such acknowledged errors were the direct result of the incompetence of her lawyers or, at a minimum, they arose as a  result of a lack of smooth communications with her lawyers which precluded the presentation of accurate schedules and statements.  These purported miscommunications were evidently exacerbated by the availability of the electronic filing system whereby the schedules themselves are not literally signed and can be uploaded and filed with the Court at the discretion of a debtor's counsel.

When evaluating whether a false statement is made knowingly, one court has quite usefully explained:

---

[29]  It does not matter that the creditor body might not have ultimately reaped a financial benefit had proper disclosure been made.  "The materiality of an omission does not depend on the value of the asset which was omitted or whether the omission was actually detrimental to creditors." *Comerica Bank v. Rajabali (In re Rajabali)*, 365 B.R. 702, 715 (Bankr. S.D. Tex. 2007), *citing Beaubouef*, 966 F.2d at 178.

A statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth. . . . Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel. Furthermore, a debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath.

*Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 313-14 (Bankr. E.D. Pa. 2006). In this instance, there was certainly information that was tendered by the Debtor to her counsel that did not appear on the schedules and statements. However, she willingly executed a Declaration prior to the filing of those documents which confirmed under penalty of perjury that: (1) she had actually read the original statements and schedules that *were to be filed* electronically in the case; (2) the information contained in those prepared statements and schedules was true and correct; and (3) she understood that the Declaration would be filed with the Court within five (5) business days after the electronic filing of the documents. Thus, the Debtor was not an innocent victim because, as contemplated in the adoption of the e-filing system, she actually possessed the right to confirm the validity of the information contained in the prospective documents by a complete review of the contents of those documents prior to the time that she signed the Declaration. She controlled whether or not to sign the Declaration. She possessed the leverage necessary to protect herself from the negative consequences that would

-15-

potentially arise <u>for her</u> from the submission of false information under the penalty of perjury.  As an admitted attorney, the significance of that leverage, and the potential implications arising from a failure to exercise it, is heightened.  However, out of a sense of deference, or for convenience, or for sheer expediency, she signed the Declaration without reviewing the documents, thereby swearing to the accuracy of documents that she had never seen.  At a minimum, that lack of concern rises to the level of a reckless disregard for the truth.

Further, having become aware of the erroneous content of the statements and schedules, the Debtor not only did nothing to correct them, she actually and falsely confirmed *under oath* the accuracy of the schedules at the original §341 meeting, though she knew that the documents as presented did not contain other responsive information that she claims to have previously supplied to her attorneys.  "Knowledge that a statement is false can be evidenced by a demonstration that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information."  *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 355 (Bankr. E.D. Tenn. 2006), *quoting Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir.1999).  That clearly happened in this instance.   The Debtor knew that she had not read the documents, notwithstanding her execution of a statement under oath that said she had, yet she willingly confirmed for a second time that the information they contained was true and correct.  The false statements were knowingly made by the Debtor.

These occurrences tie into the final consideration — as to whether the false oaths

-16-

were made with a fraudulent intent by the Debtor.  A plaintiff in a §727(a)(4)(A) action must demonstrate by a preponderance of the evidence an actual intent to hinder, delay, or defraud creditors — a constructive intent is insufficient.  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 384 (Bankr. E.D. Tex. 2009) *(citing Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989)).  However, in most circumstances only the debtor can testify directly concerning his or her intent and "rare will be the debtor who willingly provides direct evidence of a fraudulent intent." *Neary v. Darby (In re Darby)*, 376 B.R. 534, 541 (Bankr. E.D. Tex. 2007).  Instead, the existence of a fraudulent intent is most often betrayed by an examination of a course of conduct.  *First Tex. Savings Assoc. v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir. 1989).  Thus, "[f]raudulent intent may be proved by showing either actual intent to deceive or a reckless indifference for the truth." *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 504 (Bankr. N.D. Tex. 2006); *see also*, *Sholdra v. Chilmark Fin., LLP (In re Sholdra)*, 249 F.3d 380, 382-83 (5th Cir. 2001).

The Court has carefully reviewed the evidence surrounding the entire pattern of the Debtor's conduct – including the series of omissions relating to the pre-petition liquidation of substantial amounts of property and the impact of her interactions with her lawyers, or the lack thereof.  The Debtor insists that her unfamiliarity with bankruptcy documents and procedures mandated a greater degree of reliance upon her retained counsel and that an improper intent arising from the resulting falsehoods and deficiencies cannot be properly charged to her.   However, the Debtor was highly aware of the

complexities of the numerous financial activities in which she and her husband had engaged and she was a participant in the concerted pre-petition efforts to liquidate property and to utilize the funds derived thereby.  The implication that she did not know that creditor representatives were entitled to scrutinize those activities and that the Bankruptcy Code required full disclosure of all of those financial transactions in order to allow that scrutiny to take place is not credible.  Such is the honesty required to gain the benefits of a bankruptcy discharge.

While the Debtor may credibly claim to have been ignorant of the particulars required to disseminate that required information in the prescribed formats, her status as a licensed attorney means that she knows the meaning of an oath.  She knows the full significance of swearing that the contents of a document are true and correct.  Yet her benign acceptance of those shortcomings as the case progressed places her in bad light with regard to her intentions regardless of the effectiveness of her lawyers.  She never corrected the errors that she had previously affirmed.  She never fully supplemented the information that was provided.  She was fully willing to accept the benefits derived from such deficiencies.  Even with those glaring defects, one might still conclude that no fraudulent intent accompanied the failures.  After all, bankruptcy case administration in the real world is often informally accomplished by directly providing additional information to a trustee upon the trustee's evaluation and request.  Thus, even if one felt inclined to provide the benefit of the doubt to the Debtor regarding her fraudulent intent under these circumstances, that inclination disintegrates upon consideration of her

-18-

conscious concealment of the Lewisville assets.

The Lewisville assets constituted property of this bankruptcy estate.  Judge Rhoades has so declared it and the Debtor is precluded from arguing otherwise.  The record establishes that the purported non-debtor owners failed to present any corroboration for their putative ownership claims.  While the Debtor touts her lack of fraudulent intent in this case by citing all of the purported factors that hindered her full disclosure, the evidence establishes that there was no attempt by the Debtor to disclose those items of personalty surreptitiously stored in the Lewisville storage facility and which would never have been revealed by the Debtor, nor likely discovered by the Trustee, in the absence of a third party informant.  The disclosure of the Lewisville assets was clearly required.  They were clearly omitted.  The omission was clearly intentional and it defiles the Debtor's attempt to infer that she was repeatedly the innocent victim of a series of unfortunate miscues.

Upon an examination of the totality of the evidence, the Court finds that the materially false statements repeatedly occurring in the Debtor's statements and schedules were knowingly made by the Debtor with an actual intent to hinder, delay, or defraud creditors.  Her cavalier disregard for the truth in this proceeding warrants the denial of her discharge under §727(a)(4)(A).

*Section 727(a)(2): Concealment of Property.*

The Plaintiff's complaint also seeks to deny a discharge to the Debtor under §727(a)(2).  This statute provides that:

> (a)　　The court shall grant the debtor a discharge unless —
>> (2)  the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
>>> (A)  property of the debtor, within one year before the date of the filing of the petition; or
>>> (B) property of the estate, after the date of the filing of the petition.

In order to establish grounds for denial of a discharge under §727(a)(2)(A), the Plaintiff must demonstrate by a preponderance of the evidence that there was: (1) a transfer or concealment of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; and (4) performed with an intent to hinder, delay or defraud a creditor or an officer of the estate.  *Chastant*, 873 F.2d at 90.  "The elements for §727(a)(2)(B) are substantially the same as those for §727(a)(2)(A) except that the plaintiff must prove that the debtor transferred or concealed property of the estate after the bankruptcy petition was filed."  *Harwood*, 404 B.R. at 384, (*citing Rouse v. Stanke (In re Stanke)*, 234 B.R. 449, 456-57 (Bankr. W.D. Mo. 1999)).  In both instances, a plaintiff must demonstrate by a preponderance of the evidence an actual intent to hinder, delay, or defraud creditors — a constructive intent is insufficient.  *Chastant,* 873 F.2d at 91; *Martin Marietta Matl's*

*Southwest, Inc. v. Lee*, 309 B.R. 468, 481 (Bankr. W.D. Tex. 2004). However, "a court may infer such actual intent from the circumstances of the debtor's conduct." *NCNB Texas Nat'l Bank v. Bowyer (In re Bowyer)*, 916 F.2d 1056, 1059 (5th Cir. 1990) *rev'd*, 932 F.2d 1100 (5th Cir. 1991) (*citing Smiley v. First Nat'l Bank of Belleville (In re Smiley)*, 864 F.2d 562, 565 (7th Cir. 1989)).

In this evaluation, the Court incorporates by reference its earlier findings and conclusions from its §727(a)(4)(A) analysis. Transposed into this statutory context, and with particular reference to the Lewisville assets, the evidence establishes that the Lewisville assets constituted property of the bankruptcy estate that was concealed from the Trustee and the creditors of this estate. Concealment for the purposes of §727(a)(2) does not require actual physical secretion of the asset. As one court noted in its review of the applicable jurisprudence regarding concealment in this context:

> [C]oncealment suffices as a prohibited act even without a prohibited transfer. . . . It [concealment] covers other conduct, such as placing assets beyond the reach of creditors or withholding knowledge of the assets by failure or refusals to divulge owed information. A concealment for purposes of §727(a)(2) consists of failing or refusing to divulge information to which creditors were entitled. A concealment will be found when a debtor purports to transfer an asset, making it appear as if he no longer owns it, but he in fact retains an interest in the asset. Concealment includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known.

*Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 918 (Bankr. D. Utah 2006)(citations and quotations omitted). In this case, both standards were violated. The

Debtor concealed the assets and any information about them.  Such concealment continued unabated for a number of months into the post-petition period.[30]  Finally, the concealment was perpetrated by the Debtor with an intent to hinder, delay or defraud the Trustee and the creditors of her bankruptcy estate.  The required actual intent to hinder, delay or defraud is inferred by the Court from the Debtor's retention of possession of the designated estate property.[31]  Clearly the existence and location of the Lewisville assets was information to which the Debtor's creditors were entitled and which the Debtor was obligated to provide.  *Faden v. Ins. Co. of North America (In re Faden)*,  96 F.3d 792, 795 (5th Cir. 1996) ["The burden is on the debtors to complete their schedules accurately"]; *Calder v. Job (In re Calder)*, 907 F.2d 953, 956 (10th Cir. 1990) [finding that "those who seek shelter of the Bankruptcy Code must provide complete, truthful and reliable information"] (quotations omitted).  Yet, without the unanticipated intervention of an ex-friend of the Debtors, these assets would likely have never been discovered.  That is not consistent with a debtor's duty to disclose assets and constitutes an actual

---

[30]  The fact that the assets were eventually discovered and became subject to estate administration is not dispositive since proof of harm to the estate is not a required element under §727(a). *Jackson v. Herman (In re Herman),* 2009 WL 483214 at *4 n.22 (Bankr. E.D. Tex., Feb. 24, 2009) (citing *Butler*, 377 B.R. at 918).

[31]  Similar to §727(a)(4), though there must be evidence of an actual intent to hinder, delay, or defraud creditors or an officer of the estate in order to establish a §727(a)(2) claim, a court may infer such actual intent from the debtor's actions and the circumstantial evidence by examining: (1) the lack or inadequacy of consideration;  (2) the family, friendship or close associate relationship between the parties;  (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.  *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 698 (5th Cir. 2009).

-22-

intent to hinder, delay or defraud creditors.  Accordingly, the concealment of these assets by the Debtor further warrants the denial of her discharge under §727(a)(2).

*Section 727(a)(3): Preservation of Records.*

As an alternative count, the complaint seeks a denial of a discharge to the Debtor under §727(a)(3).  That section provides —

> The court shall grant the debtor a discharge —
> unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transaction might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

As this Court has previously noted,

> A discharge is denied to an individual debtor under this subsection for a failure to preserve documentation from which creditors can ascertain his financial condition and determine the nature of his financial dealings. Individuals who desire the privilege of a discharge are required to provide their creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial accuracy for a reasonable period past to present.  Section 727(a)(3) is intended to allow creditors and/or the trustee to examine the debtor's financial condition and determine what has passed through a debtor's hands.  It serves as a limitation upon a debtor's right to a discharge because creditors are not required to risk having the debtor withhold or conceal assets under the cover of a chaotic or incomplete set of books or records.

*Neary v. Guillet (In re Guillet)*, 398 B.R. 869, 888 (Bankr. E.D. Tex. 2008) (citations and

internal quotations omitted). *See also, Hughes v. Wells (In re Wells),* 426 B.R. 579, 594 (Bankr. N.D. Tex. 2006) [finding that though an impeccable system of bookkeeping is not required, "creditors should not be required to speculate about the financial condition of the debtor or hunt for the debtor's financial information"]; *Stapelton v. Yanni (In re Yanni)*, 354 B.R. 708, 712 (Bankr. E.D. Pa. 2006) [noting that §727(a)(3) "ensures that creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history"].

Under §727(a)(3), a plaintiff must prove that a debtor: (1) failed to keep and preserve financial records; and (2) that this failure prevented the plaintiff from ascertaining the debtor's financial condition. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003). Intent is not an element. "The premise of the subsection is that such financial documents would have been available under normal circumstances except for the failure of the debtor to maintain or preserve them. If this evidentiary burden is sustained,

> . . . the burden shifts to the debtor to show the inadequacy is justified under all of the circumstances. The Fifth Circuit has never delineated a precise threshold beyond which a debtor becomes accountable for further recordkeeping. A debtor's financial records need not contain "full detail," but there should be written evidence of the debtor's financial condition.

*Guillet,* 398 B.R. at 889, citing *Cadlerock Joint Venture, L.P. v. Sauntry (In re Sauntry)*, 390 B.R. 848, 855 (Bankr. E.D. Tex. 2008) (citations and quotations omitted). "The

financial records a debtor maintains should be appropriate and reasonable for a debtor of similar sophistication." *Wells,* 426 B.R. at 594.  In sum, the Court must deny a discharge under §727(a)(3) if the Plaintiff can demonstrate that each Defendant failed to keep records or "to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." *Randall v. Atkins (In re Atkins),* 458 B.R. 858, 873 (Bankr. W.D. Tex. 2011).

The evidence is replete with examples of how the Debtor failed to present insightful records to explain the methodical dissolution of her marital estate: the failure to account for the disposition of the $219,645 derived from the sale of the Mabank lakehouse; the failure to account for the disposition of the $41,665 derived from the sale of the Florida insurance company; the failure to account for the disposition of almost $700,000 derived from the liquidation of various IRA accounts; and the failure to account for the disposition of the liquidation of the various vehicles.  These unexplained transactions illustrate the degree to which this Debtor, as a sophisticated attorney and businesswoman, and her husband meticulously avoided creating paper trails that might otherwise explain the disposition of hundreds of thousands of dollars in the months preceding their bankruptcy filing.  It is certainly a fair inference from the evidence that a proper examination, or the discovery of information, was exactly what the Debtor and her husband intended to preclude.  They provided some documents to the Trustee, but those documents were far from constituting the breadth necessary to explain the propriety of their financial actions as a multimillion-dollar business empire collapsed.  In lieu thereof,

the Debtor offers only perfunctory explanations, generally without corroboration.

However, "[c]reditors are not required to accept a debtor's oral recitations or recollections of [her] transactions; rather, to qualify for a discharge in bankruptcy, a debtor is required to keep and produce written documentation of all such transactions. Records are not adequate if they do not provide enough information for the creditors or the trustee to ascertain the debtor's financial condition or to track [her] financial dealings with substantial completeness and accuracy for a reasonable period into the past." *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 500 (Bankr. N.D. Tex. 2006).  Far from being substantially justified in the failure to maintain sufficient records by which the Trustee could reconstruct and evaluate their financial transactions,[32] the Debtor has offered virtually no explanation for the dearth of documentation to explain her financial affairs, which has left the Trustee, and the creditors he represents, with little recourse other than to speculate about the truth regarding the liquidation of the Debtor's personal assets.

Given the education, experience and sophistication of this Debtor, her failure to preserve significant and relevant documentation to explain her financial affairs is inexcusable.  As the *Hughes* court observed,

---

[32]  The inquiry regarding whether the inadequacy of records is justified under the circumstances should include an examination of: (1) the education, experience and sophistication of the debtor; (2) the volume of the debtor's business; (3) the complexity of the debtor's business; (4) the amount of credit extended to the debtor in his business; and (5) any other circumstances that should be considered in the interests of justice. *JPMorgan Chase Bank v. Hobbs (In re Hobbs)*, 333 B.R. 751, 758 (Bankr. N.D. Tex. 2005) (*quoting Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1992));  *see also Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 355-56 (4th Cir. 2007) and the unpublished decision in *Womble v. Pher Partners (In re Womble)*, 108 Fed. Appx. 993, 996 (5th Cir. 2004).

> It has been said many times that receiving a discharge in bankruptcy is a
> privilege, not a right.  In order to have entitlement to that privilege, certain
> basic financial record keeping by the debtor is of paramount importance.
> Record keeping is required for parties in interest to be able to verify the
> accuracy of the sworn Schedules and SOFAs and to be certain that the
> disclosures are materially accurate.  If there are insufficient records, then
> there is no way to have a check on the integrity of the Schedules and
> SOFAs.  The integrity of the bankruptcy process depends upon having some
> reasonable and reliable paper trail.  The regrettable consequence of failure
> to have adequate records must be the denial of a discharge.

*Hughes*, 353 B.R. at 502.

Because the Plaintiff has demonstrated that the Debtor's failure to preserve

adequate financial records impaired its efforts, and that of the Trustee, to ascertain her

financial condition and the transactions relating thereto, and in light of the Debtor's

failure to justify that deficiency, such failure warrants the denial of the Debtor's discharge

pursuant to §727(a)(3).

*Attorney's Fees and Costs*.

The Plaintiff seeks an award of attorney's fees.  However, in adherence to the so-

called "American Rule," attorneys' fees are not taxable as costs or recoverable as

damages in an adversary proceeding unless such fees are authorized by statute or through

an enforceable contract between the parties.  *Bell v. Claybrook (In re Claybrook)*, 385

B.R. 842, 854 (Bankr. E.D. Tex. 2008).  Certainly §727 itself does not provide a statutory

basis for such a recovery and there is sound authority that precludes an award of

-27-

attorneys' fees in this context. *Tuloil, Inc. v. Shahid (In re Shahid),* 254 B.R. 40, 44

(B.A.P. 10th Cir. 2000); *Cole Taylor Bank v. Yonkers (In re Yonkers)*, 219 B.R. 227, 234

(Bankr. N.D. Ill. 1997). As the *Shahid* court observed:

> An action under §727 does not liquidate the debt, nor does it give the
> plaintiff a judgment on its claim. Moreover, an action under §727 may
> result in a total denial of discharge, placing every creditor in the position of
> being able to pursue collection of debts, both liquidated and unliquidated.
> The creditor that seeks such relief under §727, relief that ultimately inures
> to all creditors, does not gain any special or particularized benefit; it cannot
> liquidate its debt or obtain a judgment on its debt in an action under §727.
> That creditor cannot use an attorney's fee clause in its contract with the
> debtor to recover attorney's fees in an action under §727 because it is not an
> action on its contract.

254 B.R. at 44. Because the judgment being issued by this Court does not reach any

particularized claim against Mrs. Buescher solely for the benefit of the Plaintiff, there is

no valid basis upon which to grant the Plaintiff's request for an award of attorneys' fees.

Taxable court costs in the form of the $250.00 filing fee, however, are awarded pursuant

to 28 U.S.C. §1920.

## **Conclusion**

Complete, thorough and honest disclosure of all relevant financial information by a

bankruptcy debtor is the *quid pro quo* for the receipt of a bankruptcy discharge. "Full

disclosure of assets and liabilities in the schedules required to be filed by one seeking

relief under Chapter 7 is essential because the schedules serve the important purpose of

insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true." *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005) (*citing Beaubouef*, 966 F.2d at 179). "It is the debtor's duty to disclose everything, not to make decisions about what they deem important enough for parties in interest to know." *Butler*, 377 B.R. at 923. Because the Debtor usurped these principles, she should not receive the primary benefit afforded by this Court. Accordingly, the relief requested in the complaint filed by First United Bank and Trust Company is granted and the discharge of debts for the benefit of Sherry R. Buescher shall be denied pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3) and (a)(4)(A).[33]

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[34] pursuant to FED. R. CIV. P. 52, as incorporated into adversary proceedings in bankruptcy cases by FED. R. BANKR. P. 7052. An appropriate judgment will be entered consistent with this opinion.

Signed on 04/16/2013

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[33] Given that such denial has been adjudicated under three different subsections of §727, the court need not reach the §727(a)(5) claim. *Credit Union Liquidity Services, LLC v. Sherman (In re Sherman)*, 2011 WL 2709024, at *3 (Bankr. N.D. Tex., July 12, 2011) (*citing Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992). Further, the Plaintiff's claims under §523(a) have been rendered moot.

[34] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.